Grahame J. KULAS, Petitioner,

v.

Hon. Melvin LAIRD, Secretary of Defense, Hon. Stanley Resor, Secretary of the Army, Commanding Officer, Armed Forces Examining and Entrance Station, Fort Hamilton, Brooklyn, New York, Respondents.

No. 70 C 388.

United States District Court,
E. D. New York.

May 14, 1970.

Thomas M. Quinn, New York City, for petitioner.

Edward R. Neaher, U. S. Atty. for Eastern District of New York, Brooklyn, for respondents, Steven Arniotes, New York City, of counsel.

## MEMORANDUM AND ORDER GRANTING WRIT OF HABEAS CORPUS.

WEINSTEIN, District Judge.

Petitioner seeks a writ of habeas corpus releasing him from the custody of the Armed Services. Since the final order to report for induction, pursuant to which the petitioner submitted to induction on March 30, 1970, is invalid, the writ must issue, and the petitioner must be released.

## I. FACTS

The only evidence apart from the Selective Service file was the uncontradicted testimony of the petitioner. This testimony is highly credible. The United States knew the substance of petitioner's claims and had ample opportunity to prepare. Since the hearing was held more than three weeks after the decision of the Second Circuit in Paszel v. Laird, 426 F.2d 1169 (2d Cir. 1970)—suggesting that testimony of Selective Service officials be utilized in cases such as this— the government's failure to produce additional evidence indicates that testimony of local board members would add nothing of value to the record.

Petitioner was registered with his local board in Nashua, New Hampshire shortly after his eighteenth birthday in 1963. From that time until he was classified I–A on June 24, 1969, he attended high school and college, and was entitled to student deferments (I–S(H) or II–S).

On June 2, 1969, petitioner requested a continued student deferment because of his graduate studies in the field of vocational rehabilitation which were being financed under a grant from the Department of Health, Education and Welfare. Believing that this request constituted all that was necessary to secure a personal appearance and appeal in the event of a denial of his request, he did not communicate with his local board again until August 18, 1969. On that day he appeared at his local board

and sought a personal appearance and appeal.

Told by clerks at the local board that a personal appearance could no longer be granted, but that an appeal would be allowed, the petitioner executed a written request for an appeal. He also, as his testimony indicates,

"requested to see a Government appeal agent to more or less find out what my rights are and where I erred, if I did. [The clerk] indicated again that it would be too late for her to arrange a time to see the Government appeal agent.

"At that time, the clerk—the second clerk said to me that if I had any questions that I should direct them to her because she knew almost as much about the law as the Government appeal agent does, so I reiterated what I had said to the first clerk. She said, 'No. We don't have time to arrange for a personal appearance or have you see a Government appeal agent.'

\* \* \* \* \* \*

"[S]he said to me that I shouldn't tell her how to do their work, and then the first secretary started to raise her voice at me. \* \* \*

"Then, she said, 'Well, we'll send your file to the State Board of Appeal if you want, but we will not grant you a personal appearance.' \* \* \*

"She said, 'Either have your file sent to the State Appeal Board or I'll put your file back into the file and you will be inducted accordingly.' "

His file was sent to the State Appeal Board that day, pursuant to 32 C.F.R. § 1626.2(d), which provides that an appeal may be permitted, although the time for one has expired, if the failure to appeal earlier "was due to lack of understanding of the right to appeal." The file was returned to the local board on September 19, 1969, after the Appeal Board had affirmed the decision below. Less than one week later, September 25, 1969, petitioner was ordered to report for induction.

An unexplained note pinned to the file indicates that the local board met on October 14, 1969 and "reviewed and considered" the "entire contents of [registrant's] file." This memorandum suggests that the local board passed on the student deferment claim on the merits after petitioner was ordered to report for induction but before the conscientious objector claim detailed below was filed. The note stated that the "Board feels it is about time registrant be thinking of meeting his military obligations before seeking further deferments."

Petitioner has consistently asserted that prior to the date he was first ordered to report for induction his religious beliefs had matured within the context of his Roman Catholicism into conscientious opposition to participation in war at any time. Nevertheless, he made no assertion of this claim until October 21, 1969, after requesting the Special Form for Conscientious Objectors on October 3, 1969. In his dealings with the local board, and at the hearing in this case, the petitioner explained this delay by stating that not until late September or October, 1969—after the notice to report for induction—did he first learn that his Roman Catholicism did not, as a matter of law, preclude him from a claim to conscientious objector status.

After the submission of petitioner's claim of conscientious objection to the local board, with a carbon copy to the State Director of Selective Service, the Director reviewed the file and, in a letter of October 27, 1969 to the local board, wrote:

"In order that this registrant may be granted every right to which he is entitled, I am requesting the local board to postpone his induction date for an indefinite period. This postponement will allow the local board to carefully consider the registrant's claim of conscientious objection on the basis of the evidence submitted. If the local board is unable to grant the conscientious objector classification claimed, it shall request the registrant to appear before it for a personal interview in accordance with Local Board Memorandum No. 41, paragraph 3(b)."

Local Board Memorandum No. 41 provides in pertinent part:

"2. What Constitutes a Claim of Conscientious Objection.—A registrant should be considered to have claimed conscientious objection to war if he has signed Series VIII of the Classification Questionnaire (SSS Form No. 100), if he has filed a Special Form for Conscientious Objector (SSS Form No. 150), or if he has filed any other written statement claiming that he is a conscientious objector.

"3. Consideration of C.O. Claims by Local Boards.—(a) The local board will make every effort to secure a completed Special Form for Conscientious Objector (SSS Form No. 150) from each registrant who signed Series VIII of the Classification Questionnaire (SSS Form No. 100) or who has filed a written statement claiming he is a conscientious objector. However, the absence of an SSS Form No. 150 does not preclude consideration of all the other evidence in the cover sheet to support the claim.

"(b) If, upon consideration of this evidence, the local board determines that it cannot grant the I–A–O or I–O classification claimed, the local board should invite or request the registrant to meet with it for an interview prior to classification. The primary purpose of the interview will be to develop further facts on which the conscientious objector claim is based, and the sincerity of such claim. This interview does not take the place of the personal appearance which the registrant may request under Section 1624.1, after the classification action."

While ambiguous, the reference to Memorandum 41 seems to have been intended as an assertion that a reopening and an opportunity for a personal appearance was not being ordered. In accordance with the Director's suggestion, petitioner's date of induction was postponed, and, by letter of November 12, 1969, the local board directed his presence at a "personal appearance" on November 18, 1969. Petitioner was informed that at this meeting he would be required to summarize in writing whatever was discussed. At the local board he was told that the meeting constituted merely an "interview" and not a "procedural personal appearance." Nothing in the file indicates that the local board complied with the request of the State Director to determine, before it ordered him to appear, whether the petitioner's conscientious objector claim might be granted.

The summaries of the November 18 meeting made by both the local board and the petitioner indicate that questioning was directed solely to the issue of the time of maturation of the petitioner's conscientious objector claims, and not to the nature of his beliefs. The minutes of the local board following this interview contain the following statement:

"After the registrant left the meeting room at 8:50 a. m. the board reviewed his file again and considered the evidence submitted. The board feels that after all this time and being in college, it is difficult to believe that he was unaware of all of his rights. Looked for further student deferments—now filing for a I–O classification. Classification not reopened."

On November 21, the local board notified petitioner that his classification had not been reopened, and ordered him to report for induction. Subsequent postponements, at the behest of the National Director of Selective Service, resulted in a final order to report for induction on March 30, 1970. Petitioner submitted to induction that day, and this action was filed immediately thereafter.

## II. SCOPE OF REVIEW

■■■■ Violations of due process in refusing to reopen and reconsider a classification sufficient to warrant relief in the federal courts may occur in two ways. First, a local or appellate board may deny a registrant valuable procedural rights designed for his protection in violation of applicable statutes or regulations; second, there may be no basis in fact for the decision, and therefore no

"jurisdiction" to assign the classification. 50 U.S.C. App. § 460(b) (3). Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567 (1946). *See generally* Robertson v. United States, 404 F.2d 1141, 1147 (5th Cir. 1968); United States v. Freeman, 388 F.2d 246, 247–248 (7th Cir. 1967); United States ex rel. Vaccarino v. Officer of Day, 305 F.Supp. 732 (S.D.N.Y.1969). After an order to report for induction has been issued, the registrant must show that the local board acted without a basis in fact in refusing to reopen his classification before that determination may be overturned. *See, e. g.,* Paszel v. Laird, 426 F.2d 1169 (2d Cir. 1970).

### III. DENIAL OF ACCESS TO APPEAL AGENT

■ The opportunity to consult with an Appeal Agent appointed by the Selective Service System arises from the Selective Service Regulations and the duties owed to registrants by Appeal Agents. 32 C.F.R. § 1604.71. When the denial of the right to such consultation may have resulted in substantial prejudice to the registrant, a subsequent classification and induction is invalid. Steele v. United States, 240 F.2d 142, 145–146 (1st Cir. 1956); United States v. Howe, 144 F. Supp. 342 (D.Mass.1956); United States v. Schwartz, 143 F.Supp. 639 (E.D.N.Y. 1956).

■ Petitioner was substantially prejudiced by the denial of an opportunity to consult with an Appeal Agent. The local board forwarded his file to the Appeal Board on August 18, the same day that he requested, and was denied, a conference with the Appeal Agent. This action effectively denied him the right to the legal advice offered by the Selective Service System in the preparation and prosecution of an appeal. 32 C.F.R. § 1604.71(c), (d). Not only was he refused a chance to consult with the Appeal Agent, but the Appeal Agent was denied the opportunity to do his duty by being "diligent in protecting * * * the rights of the registrant in all matters"

(32 C.F.R. § 1604.71(d)(5)) and, on behalf of the petitioner, in seeking to reopen the matter. 32 C.F.R. § 1604.71(d) (3). Moreover, since the registrant's statement on appeal would have had to be sent with his file to the Appeal Board, the lack of advice coupled with the precipitous demand to appeal at once or be inducted, prevented petitioner from effectively presenting a reasoned appeal. 32 C.F.R. §§ 1626.12, 1626.24(b). *Cf.* United States v. St. Clair, 293 F.Supp. 337, 345 (E.D.N.Y.1968).

In light of the short time available between the time of his classification by the Appeal Board and the time of his order to report for induction, action by the Appeal Agent on behalf of the registrant might have been vital. Consultation with the Appeal Agent would, at least, have appraised petitioner of the necessity for prompt action in the assertion of further claims, and might also have informed the petitioner of his eligibility for conscientious objector status. In the circumstances of this case, where the Appeal Board affirmed the local board on September 19, and the petitioner was ordered to report for induction less than one week later, prompt action was necessary for the preservation of important procedural rights. For example, had petitioner submitted a claim for conscientious objector status before September 25, the local board would have been obliged to reopen his classification since a *prima facie* case for conscientious objection was made out. Paszel v. Laird, 426 F.2d 1169, 1173 (2d Cir. 1970); United States v. Sandbank, 403 F.2d 38 (2d Cir. 1968), cert. denied, 394 U.S. 961, 89 S.Ct. 1301, 22 L.Ed.2d 562 (1969); United States v. Gearey (II), 379 F.2d 915, 922, n. 11 (2d Cir. 1967), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed. 2d 368 (1968). Even a request for the Special Form for Conscientious Objectors only a few days earlier might have avoided the substantial procedural difficulties that prevented consideration of the merits of petitioner's conscientious objector claim by the local board. Local

Board Memorandum No. 41 of November 30, 1951, as amended July 30, 1968; Mizrahi v. United States, 409 F.2d 1219, 1224 (9th Cir. 1969) (letter requesting conscientious objector form was a written statement claiming that status). Once the Order to Report for Induction was mailed, a finding of change in status resulting from circumstances over which he had no control was required. 32 C.F.R. § 1625.2; Paszel v. Laird, 426 F.2d 1169 (2d Cir. 1970).

In effect, the petitioner was penalized for his failure to bring his conscientious objector claim to the attention of the local board between September 19, when his classification was affirmed, and September 25, when his order to report for induction was issued. We cannot say that this delinquency would have occurred had there been a conference with an Appeal Agent.

█ The "classification procedure is not an adversary proceeding between a board and a registrant in which the slightest misstep will penalize a registrant." United States v. Bryan, 263 F. Supp. 895, 899 (N.D.Ga.1967). Registrants may not be treated as if they were legal experts qualified for delicate maneuvers amid the intricacies of the Selective Service regulations, statutes, and case law. Simmons v. United States, 348 U.S. 397, 404, n. 5, 75 S.Ct. 397, 99 L.Ed. 453 (1955); United States v. Holmes, 426 F.2d 915, 918 (2d Cir. 1970); United States v. Stafford, 389 F.2d 215, 218 (2d Cir. 1968); United States ex rel. Vaccarino v. Officer of Day, 305 F.Supp. 732, 736 (S.D.N.Y.1969).

Here, the registrant attempted to comply with the procedures of the Selective Service System. He obeyed its injunction to seek advice at the local board. Cf. United States v. Powers, 413 F.2d 834, 837 (1st Cir.), cert. denied, 396 U.S. 923, 90 S.Ct. 256, 24 L.Ed.2d 205 (1969). He was denied the advice that he was entitled to receive. Such help is, as the Second Circuit has noted in another context,

"precisely the kind of thing that a * * * conference with the Appeal Agent * * * would have been almost certain to reveal, with the result that the board would have passed on the merits of [the registrant's] claim." United States v. McGee, 426 F.2d 691, 699 (2d Cir. 1970).

Since the petitioner was refused the information and opportunity to consult with an Appeal Agent which he had requested, and since there is a substantial probability that this refusal adversely affected him, the order to report for induction must be regarded as invalid.

## IV. BELATED CLAIM TO CONSCIENTIOUS OBJECTOR STATUS

The petitioner also alleges that the local board violated due process in refusing to reopen his classification after the interview of November 18, 1969. Two alternative grounds for relief are presented. First, the local board utilized an impermissible basis for its decision not to reopen the petitioner's classification and consider the merits of his claim. Second, as a matter of law, there was no basis in fact for a finding that the registrant's conscientious objector claims crystallized before this order to report for induction was issued.

### A. Improper Basis for Action

██ At the meeting of November 18, the local board based its decision not to reopen at least in part on the fact that petitioner had "[l]ooked for further student deferments." The fact that a registrant has sought deferments on grounds other than conscientious objection is not a permissible basis for a decision not to grant a conscientious objector claim or to refuse to reopen a classification. United States v. Bornemann, 424 F.2d 1343 (2d Cir. 1969); Capobianco v. Laird, 424 F.2d 1304 (2d Cir. 1970); United States v. Gardiner, 310 F.Supp. 364 (E.D.N.Y.1970). It is the duty of the local boards to classify a registrant in a category other than I–O, I–A–O or I–A if evidence in the record shows the right of the registrant to some other classification. 32 C.F.R. §§ 1622.-

10, 1622.11, 1622.14. Yet, this fact—that he sought a further student deferment—was one of the bases relied upon by the local board in denying petitioner's conscientious objector claim.

■ In such a situation, where one impermissible basis is relied upon among others for the decision of the local board and the weight given this basis is uncertain, the decision of the board may not be permitted to stand. Sicurella v. United States, 348 U.S. 385, 391–392, 75 S.Ct. 403, 99 L.Ed. 436 (1955); United States v. St. Clair, 293 F.Supp. 337, 344 (E.D. N.Y.1968); United States v. Englander, 271 F.Supp. 182 (S.D.N.Y.1967).

### B. *Crystallization of Beliefs*

■ Reopening of a classification is required if the board finds that conscientious objection crystallized or matured after it was too late to file the claim in advance of an order to report for induction. United States v. Gearey (I), 368 F.2d 144 (2d Cir. 1966), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967); United States v. Stafford, 389 F.2d 215 (2d Cir. 1968); United States v. Holmes, 426 F.2d 915 (2d Cir. 1970).

■ A belief in conscientious objection includes two aspects: first, the requisite state of mind with respect to religion and war, and, second, knowledge sufficient to characterize this state of mind as conscientious objection. Ordinarily this second category, knowledge of law, may be imputed to the registrant. *Cf.* United States v. Powers, 413 F.2d 834, 837 (1st Cir. 1969); Dugdale v. United States, 389 F.2d 482, 484–485 (9th Cir. 1968); ALI, Model Penal Code § 2.04 and Comments at 135–39 (Tent. Draft No. 4). Had petitioner been permitted to speak with an Appeal Agent or other advisor as he requested, failure to acquaint himself with the applicable regulations and decisions might well have supported the local board's inference of petitioner's knowledge of the law. Where, however, as is the case here, an individual has made an effort to obtain legal information and has been frustrated by the actions of agents of the local board, this assumption of knowledge of law should not be applied. Powers v. Powers, 400 F.2d 438 (5th Cir. 1968); United States v. Steele, 240 F.2d 142 (1st Cir. 1956). *See also* Petersen v. Clark, 289 F.Supp. 949, 958 (N.D.Calif.1968). *Cf.* ALI, Model Penal Code § 2.04 (Tent. Draft No. 4).

It is worthy of note that the first case to hold that traditional Roman Catholic views could support a claim for conscientious objection was not decided until December, 1969. United States v. Bowen 2 SSLR 3421 (N.D.Calif.1969). Some cases decided subsequently leave the distinct impression that they, in fact, involved late crystallization, not of substantive beliefs, but of knowledge of the law. *See* Paszel v. Laird, 426 F.2d 1169 (2d Cir. 1970); Capobianco v. Laird, 424 F.2d 1304 (2d Cir. 1970); United States v. McGee, 426 F.2d 691 (2d Cir. 1970).

■ Although the local board acted correctly in deciding to investigate the time at which petitioner became aware of his rights to conscientious objector status, it acted without a basis in fact in deciding that he had learned of these rights before the issuance of the order to report for induction. Capobianco v. Laird, 424 F.2d 1304 (2d Cir. 1970); Paszel v. Laird, 426 F.2d 1169 (2d Cir. 1970). Petitioner had studied at a small, sectarian college, and had previously met only one conscientious objector, a member of an organized religious group known for its support of conscientious objection as an article of faith. He was under the impression that Catholics could not qualify under the law as conscientious objectors. He had earlier been denied the opportunity to obtain information and advice from the Selective Service System. There was nothing in the record to contradict his assertion that he had not learned of his rights until too late. "There is no evidence to indicate that [the registrant] said anything that threw doubt on his sincerity or that he was evasive or shifty during the interview." Capobianco v. Laird, 424 F.2d 1304 (2d Cir. 1970). Thus, there was

no basis in fact for the failure of the local board to reopen this case on November 18, 1969. Having failed to reopen, the board denied petitioner a number of substantial rights, not the least of which was consideration and appellate review of the merits of his conscientious objector claim. 32 C.F.R. § 1625.11; Davis v. United States, 410 F.2d 89, 96 (8th Cir. 1969).

## V. DE FACTO REOPENING

Petitioner argues that consideration of the merits of his claims by the local board on October 14, 1969 and, possibly, on November 18, 1969 constituted—without more—a de facto reopening of his case even after an order to report for induction was issued. He also contends that the letter of the State Director of Selective Service mandated the reopening of his case by the local board. In light of the disposition of this petition on the preceding grounds, it is unnecessary to pass upon these substantial questions. *Cf.* Davis v. United States, 410 F.2d 89, 92–93 (8th Cir. 1969); Sandbank v. United States, 403 F.2d 38, 39 (2d Cir. 1968), cert. denied, 394 U.S. 961, 89 S.Ct. 1301, 22 L.Ed.2d 562 (1969); Miller v. United States, 388 F.2d 973 (9th Cir. 1967); United States v. Vincelli, 215 F. 2d 210 (2d Cir. 1954); United States v. Gardiner, 310 F.Supp. 364 (E.D.N.Y. 1970); United States v. Westphal, 304 F.Supp. 951 (D.S.D.1969).

## VI. CONCLUSION

The writ of habeas corpus must be granted in this case for several reasons. First, the local board, through its agents, denied the petitioner the opportunity to consult with an Appeal Agent before his appeal of the board's decision. This resulted in substantial prejudice to the petitioner in the assertion of his claims, and amounted, in the circumstances of this case, to a denial of due process. Second, in refusing to reopen the petitioner's classification after the November 18 hearing, the local board acted, at least in part, on the basis of an impermissible alternate ground. Third, the refusal of

the local board to reopen petitioner's case was without a basis in fact. By improperly refusing to reopen and consider the petitioner's claims to conscientious objector status, and by thus denying the petitioner the right to a personal appearance and appeal within the Selective Service System, the local board acted to deprive the petitioner of due process. In short, the final order of the local board to report for induction was a nullity.

The petition for the writ of habeas corpus is granted. The respondents are directed to release the petitioner from their custody.

So ordered.