**UNITED STATES of America,
Plaintiff,**

v.

**Ralph MERCADO, Defendant.**

**No. 71 Cr. 961.**

United States District Court,
S. D. New York.

Nov. 22, 1972.

Whitney North Seymour, Jr., U. S. Atty., New York City by George E. Wilson, Asst. U. S. Atty., for plaintiff.

Kunstler, Kunstler & Hyman by Steven J. Hyman, New York City, for defendant.

BRIEANT, District Judge.

By indictment filed August 31, 1971, defendant Ralph Mercado was charged, on or about the 5th day of April, 1971, and up to and including the date of filing of the indictment in this District, with knowing failure, neglect and refusal to perform a duty required of him under, and in execution of, the Military Selective Service Act of 1967, 50 U.S.C. App. § 451 et seq. Specifically, defendant was charged with knowing and unlawful failure, neglect and refusal to submit to induction in the Armed Forces of the United States.

Defendant pleaded not guilty, and waived trial by jury. The cause was tried before me on September 15, 1972. Decision was reserved, and defendant continued on bail.

The Regulation that defendant is charged with violating is found in 32 C.F.R. § 1632.14, which imposes the following requirements, and makes compliance a continuing duty:

"(a) When the local board mails to a registrant an Order to Report for Induction, SSS Form No. 252 . . . it shall be the duty of the registrant to report for induction at the time and place fixed in such order . . . regardless of the time when or the circumstances under which a registrant fails to report for induction when it is his duty to do so, it shall thereafter be his continuing duty to report for induction to his local board . . . .

(b) Upon reporting for induction it shall be the duty of the registrant . . . (3) to appear at the place where his induction would be accomplished, (4) to obey the orders of the representatives of the armed forces while at the place where his induction will be accomplished, (5) to submit to induction . . . ."

Ralph Mercado was born on August 20, 1951. He registered with Local Board No. 27, at 1910 Arthur Avenue, Bronx, New York, on August 28, 1969. On March 18, 1970, he was classified 1–A, available for military service. The Local Board mailed him SSS Forms 110 and 217 on March 18, 1970, informing him of his notice of classification, his procedural rights to appeal and his right to a personal appearance before the Board. The defendant did not exercise any of these rights.

On October 22, 1970, a pre-induction notice (Form 223) was mailed to defendant, requiring him to report at the Armed Forces Examining & Entrance Station at 39 Whitehall Street, New York, New York, on October 15, 1970. Defendant so reported and was found fully acceptable after having submitted to the requisite physical examination.

606

Form 62 was then mailed to him on October 23, 1970, so informing him.

Subsequently, defendant was mailed a notice ordering him to report for induction at Whitehall Street on April 5, 1971. At the induction center, defendant executed Form DD 398, a statement of personal history. The form includes questions which determine whether an inductee is a security risk for the Armed Forces, and seeks other data as well, including material relevant to moral qualifications. In response to question No. 19, as to whether there are incidents in defendant's life not mentioned in the application which may reflect upon his loyalty to the United States or upon his suitability to perform the duties required of him, Mercado wrote: "I am a Bible student with the Jehovah Witnesses and I am a conscientious objecter (sic)."

In the event that a claim for exemption as a conscientious objector is made at the induction, prior to submitting to induction, then the Processing and Executive Officer at the station, a military officer, seeks the advice of Selective Service personnel as to whether or not to proceed with induction.

The Selective Service liaison official on duty that day was Mr. D'Ambrosia. Captain Vopni, the Processing Officer, notified D'Ambrosia when it became apparent to him that Mercado was going to refuse induction. The mere reading of Mercado's Form 398 did not affect Vopni's actions since, in his words, "The fact that he puts a notation on the form that he is a C–O is not necessarily a claim for C–O status."

Apparently, after Mercado had communicated his intentions, and after conferring with D'Ambrosia regarding Mercado's Form DD 398, Captain Vopni telephoned the Security Division of the U. S. Army Recruiting Command and notified them that Mercado was about to refuse induction on the grounds of conscientious objection. The Security Division personnel determined that the facts related in Mercado's statement were not sufficient for disqualification. Captain Vopni so indicated on the form 398 in the column headed "remarks". He was further instructed to proceed with the induction.

After initial processing was completed, defendant refused induction. Captain Vopni counselled and advised defendant this his failure to step forward constituted a felony, and explained the possible penalty he faced if convicted. Defendant was again informed that he had been found fully acceptable for induction. Again, he was offered induction, but refused to submit to induction.

After refusing induction, or immediately prior thereto, defendant executed the following document, witnessed by Captain Vopni:

"I Ralph Mercado am refusing induction into the armed forces for biblical reasons.

Those seeking the truth shouldn't take part in worldy matters, was said by Jesus Christ.

My alliegence (sic) is to serving Jehovah. God, and I will be judged by Jehovah in the end not man."

On April 6, 1971, the next day, defendant wrote to his Local Board in part as follows:

"As a Bible student with Jehovah's Witnesses I uphold Jehovah's Law: "Thou shall not kill". As a Bible student I also uphold all the government's laws as long as they do not conflict with Biblical ones.

I attend Jehovah's Witnesses regularly three times a week with additional home studying from one of Jehovah Witnesses. Soon I will begin preaching from house to house, as a regular minister.

With the above reasons in my mind I hereby request that my Draft Card Status be changed to CO, ie (sic) Conscientious Objector. Thank you very much."

After receipt of this letter, Laura Vitale, Executive Secretary of the Local Board, sought advice of the legal division

of Selective Service at its New York City Headquarters. On the advice of Headquarters, SSS Form 150, the standard application form for conscientious objectors, was mailed to defendant. Contemporaneously, on April 15, 1971, the Local Board notified defendant of a scheduled Board meeting on May 12, 1971, at which he was to appear and be interviewed with respect to his application for exemption as a conscientious objector.

On April 16th, Thomas Maher, then Chief of the Legal Division at Selective Service Headquarters in New York, wrote to the Local Board, explaining the recommended course of conduct for it to follow in Mercado's case. He wrote:

"In considering this post induction claim for conscientious objection, the local board should first address themselves to the critical issue as to whether the registrant sincerely holds the beliefs he sets forth. If they find he does not, the facts upon which they rely in coming to this conclusion should be referred to.

\*　　\*　　\*　　\*　　\*　　\*

Since the induction order remained outstanding, § 1625.2, regarding claims made after the issuance of an induction order was applicable. Mr. Maher attached a memo explaining the legal position of the Local Board under such circumstances.[1]

1. The Memorandum read as follows:

UNITED STATES GOVERNMENT
MEMORANDUM

TO　　　: Local Board No. 27　　　　　　　　　DATE: April 16, 1971

FROM　　: Chief, Legal Division

SUBJECT: MERCADO, Ralph 50 27 51 591 (71) 069

We understand that the above has claimed conscientious objection, while an induction order was outstanding.

Under these circumstances, the local board is limited from reopening or changing a classification by way of 1625.2, which asserts that a local board may not reopen a classification while an induction order is outstanding, unless they can specifically find a change in the registrant's status resulting from circumstances beyond his control.

In applying this regulation the local board should make certain findings and such applicable findings should be entered into the file.

The local board should first determine whether the beliefs set forth by the registrant are *sincerely held* by him. If the board finds he is not sincere, then the classification should not be reopened as there would be no *change* in his status, i. e., he is not a conscientious objector now nor was he prior to the issuance of the induction order.

If the local board finds that the registrant is sincere then they should determine when his beliefs matured or crystalized. If his beliefs matured *after* the issuance of the induction order, *and if* his beliefs qualify for conscientious objection, i.e., he is conscientiously opposed to participation to *war in any form* by reason of his "religious training and beliefs," as per Supreme Court's Decisions in U. S. v. Seeger [380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733] (March 1965) and U. S. v. Welsh [398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308] (June 15, 1970), *then* the local board must reopen his classification.

If the local board finds that his beliefs matured prior to the issuance of the induction order, then they may not reopen as there would be no change in his status, i. e., he had these beliefs prior to and subsequent to the issuance of the induction.

*PLEASE KEEP THIS HEADQUARTERS ADVISED*

Selective Service System
LOCAL BOARD NO. 27
APR 20 1971

1910 Arthur Avenue
Bronx 57, N. Y.

(s) THOMAS R. MAHER
THOMAS R. MAHER
Major, ACC
Chief, Legal Division

As of April 6, 1971, the procedure which Mercado had followed was a permissible one. Under then existing case law, a person deeming himself to be a conscientious objector could remain silent in this Circuit, and allow Selective Service procedure to take its course. At the induction station he could refuse to submit to induction and then for the first time assert a right to exemption as a conscientious objector.

Nor was it necessary to show that he was in fact a so-called "late crystallizer" whose convictions of conscience against war ripened subsequent to the date of his induction notice. He could have held the same conscientious views long prior to the mailing of the induction order, and could have asserted these long standing beliefs for the first time at the induction station, either because he was unaware of his rights, or because he had been fully counseled by one familiar with the ruling case law in this Circuit. See, e. g. United States v. Stafford, 389 F.2d 215 (2d Cir. 1968) in which the beliefs were found to be "of long standing". See also Paszel v. Laird, 426 F.2d 1169; Capobianco v. Laird, 424 F.2d 1304, rev'd on May 17, 1971, 402 U.S. 969, 91 S.Ct. 1648, 29 L.Ed.2d 134; United States v. Holmes, 426 F.2d 915, rev'd 402 U.S. 969, 91 S.Ct. 1644, 29 L.Ed.2d 134. All of these cases, decided in the Second Circuit, conveyed to registrants and their counselors the distinct impression that the making of a *prima facie* case for reclassification as a conscientious objector, after notice to report for induction "automatically entitles a registrant to a reopening of his classification" (*Paszel,* and *Capobianco, supra*).

The rule was otherwise in the Ninth, Fourth, Fifth and Sixth Circuits. See cases cited in footnote 3, Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625, decided April 21, 1971.

As of April 5th and 6th of 1971, I can find no criminal intent with respect to Mercado's conduct. Mercado either knew that ruling case law in the Circuit entitled him to conduct himself as he had done, or if ignorant, is to be treated no worse for purposes of this indictment than he would be if he knew.

All this changed on April 21, 1971, when *Ehlert* was decided. In *Ehlert*, a Local Board refused to reopen a registrant's classification, and pass on his conscientious objector claim, asserted for the first time after the mailing of his induction notice but before induction. The Board reasoned that this was not a change in the registrant's status resulting from circumstances over which the registrant had no control, in accordance with 32 C.F.R. § 1625.2 (1971).

The Supreme Court upheld a conviction in the 9th Circuit, and endorsed this reasoning of the Local Board, noting that the rule laid down was not unreasonable, as a limitation on the time within which a local board must consider such a claim on the merits, in light of the Government's assurance that one so affected would have full opportunity to obtain an in-service determination of his claim without having to perform combatant training or service pending such disposition.

The rule in *Ehlert* is retroactive. Capobianco v. Laird, *supra* and United States v. Holmes, *supra,* both involved pre-*Ehlert* situations. Both held that statements as to conscientious objection filed after an induction order must be considered by the Local Board, and that the Board must reopen the classification in such cases, absent an articulated basis in fact for declining to do so. The Supreme Court, on May 17, 1971 (402 U.S. 969, 92 S.Ct. 1644, 1648, 29 L.Ed.2d 134) (Mr. Justice Douglas dissenting) granted certiorari in both cases, vacated the respective judgments, and remanded for reconsideration in light of *Ehlert.*

If *Ehlert* applies to *Capobianco* and *Holmes,* which both involve material operative facts arising in 1968, certainly, *a fortiori, Ehlert* applies to Mercado. Mercado's circumstances here are indistinguishable from Ehlert's. Mercado's

filing of his C–O claim was properly not permitted to void, retroactively, an otherwise valid order to report for induction, or to postpone, indefinitely, his duty to report. Mercado showed the Local Board absolutely no change in those circumstances over which he had no control.

The applicable selective service procedures were revised promptly so as to effectuate and make applicable the decision in Ehlert. This was done by amending Local Board Memorandum No. 111, originally issued August 11, 1970. Such amendment was dated April 23, 1971, two days following *Ehlert*.

Defendant Mercado appeared before the Local Board on May 12, 1971. The members at that time explained to defendant that consideration of his claim on the merits was precluded by the aforementioned Local Board Memorandum No. 111. With regard to the reopening of classifications, Memorandum No. 111 contains the following specific provision:

"Claims submitted by a registrant after the mailing of the Order to Report for Induction (SSS Form 252), will continue to be processed under the provisions of section 1625.2(b) of the regulations. Claims for classification in Class I–O or I–A–O received by the local board *after the mailing of the Order to Report for Induction* (SSS Form 252) *may not be considered.* Written information relevant to such claims shall be placed in the regis-

trant's Cover Sheet (SSS Form 101)." (Emphasis supplied)

The Board subsequently notified the defendant by letter that it had declined to reopen his classification on the basis of his C–O claim.

He was given a new notice to report for induction on May 26, 1971.[2] He appeared and again refused to step forward, and thereby submit to induction as required by the law and regulations. He made no statements.

On May 26, 1971, defendant was confronted with (1) *Ehlert*, decided April 21, 1971; (2) Local Board Memorandum No. 111, issued April 23, 1971, to effectuate the *Ehlert* doctrine; and (3) the reversal by the Supreme Court on May 17, 1971, of *Capobianco* and *Holmes,* making clear the retroactivity of *Ehlert*. Under the circumstances of May 26, 1971, defendant's second refusal to submit to induction, I find that the requisite intent not to perform the act required by law, is present. No conviction could be had based on his April 5th conduct alone. The duty to submit to induction remained thereafter, up to the filing of the indictment, and, indeed continues presently.

Cases such as United States v. Cotton, 346 F.Supp. 691 (S.D.N.Y.1972) and United States v. Shomock, 462 F.2d 338 (3rd Cir. 1972) are distinguishable, because at no time after April 5, 1971 was Mercado's contention considered on the merits. Like Ehlert, he may obtain full consideration following induction.[3]

---

2. This notice consisted of a letter from his local board dated May 13, 1971, which advised in part as follows:
   "Please be advised it is your continuing obligation to report for INDUCTION as indicated on your order issued by this local board on March 15, 1971 Therefore, you are hereby directed to report to the ARMED FORCES EXAMINING AND ENTRANCE STATION, 39 Whitehall Street, New York, N.Y. on <u>May 26, 1971</u> at 7:00 A.M. for Armed Forces INDUCTION." (Underlining in original)

3. Defendant can, if he wishes, still pursue his entitlement to an exemption based on conscientious objection. All he need do is to honor his continuing duty and obligation to submit to induction and upon induction, pursue the procedure outlined in *Ehlert*.
   Superficially, this would seem to condemn defendant to following a useless procedure of the sort characterized, in another context, as a "merry-go-round" (Male v. Crossroads Associates, 469 F.2d 616 [2d Cir., decided November 10, 1972]).
   Lest this merry-go-round posture in which defendant finds himself be deemed unjust, attention is directed to the fact that: defendant declined to take the opportunity to make a showing that he was

The fact that defendant was furnished an application form, permitted to file it, and later told that he was not in the proper forum was certainly not a consideration of his claim by the Local Board. While he was given an interview in a nominal sense, the Board declined to reopen his classification solely because of the rule established in *Ehlert*. Mercado's Board considered itself administratively prohibited, as a matter of law, from considering his claim.

In Palmer v. United States, 401 F.2d 226 (9th Cir. 1968) the Court stated that:

> "The question for the Court is simply whether at the time of refusal to submit to induction the registrant was under a duty to submit. If he was, a crime was then committed. In dealing with this question the courts do examine into the validity of the order to report and this in turn involves a limited review of past board action in classifying the registrant. These matters bear directly upon the issue of guilt. What occurs after refusal, however, is not relevant to that issue."

■ Assuming, arguendo, that on April 5, 1971, the defendant was not under a legal duty to submit, there is no question that on May 26, 1971, he was. The indictment includes this crime by reciting that defendant is charged with violating the law up to and including the date of the filing of the indictment. Since the outstanding induction order was continuing in nature, the crime may be said to have become complete at least by May 26, 1971.

■ Mercado claims that he is entitled to exemption alternatively, as a minister or divinity student. He never asked for such classification IV–D, and the papers filed by him with the Local Board in support of his claim to exemp-

tion as a conscientious objector did not, and were not intended to, assert a *prima facie* claim to such classification.

■ The statements made by defendant illustrate that he was a Bible student, was a Jehovah Witness, and joined the "Theocratic Ministry School". Even assuming that the Local Board reviewed his application, his claim for ministerial exemption which he now asserts would fail on the merits since he neither occupied a position with the religion which qualifies him for consideration as a "minister" nor did he devote enough time to his activities. Although the Watchtower Bible and Tract Society, the governing body of the religion, recognizes every Jehovah's Witness as a "minister" in the religious sense, it claims ministerial status for selective service purposes only for Pioneers and Congregation Services. Defendant never claimed to be more than a minister. The fact that he was ready to engage in house to house ministry does not qualify him for more.

By 50 U.S.C. App. § 456(g), exemption is allowed for Ministers of Religion. 32 C.F.R. § 1622.43 defines that term to include only those in which the ministry is a "customary" vocation. In Fitts v. United States, 334 F.2d 416 (5th Cir. 1964), the court in upholding a local Board's rejection of a claim for IV–D status, set forth the following criteria:

> "First, the registrant must have the ministry as a vocation rather than an avocation . . . . Second, religious affairs must occupy a substantial part of the registrant's time and they must be carried on with regularity . . . . Finally, and most important, in order to obtain an exemption, a registrant must stand in the relation of a minister to a congregation or in an equivalent relation as a recognized leader of a group of less-

---

in fact a conscientious objector to all wars. Our courts " . . . do not decide abstract questions posed by parties who lack 'a personal stake in the outcome of the controversy'." Socialist Labor Party v. Gilligan, 406 U.S. 583, 586, 92 S.Ct. 1716, 1718, 32 L.Ed.2d 317 (1972). Unless defendant is a conscientious objector he is not aggrieved by the retroactive application of *Ehlert*.

er members of his faith. One of the basic purposes of the exemption is to guard against a flock being left without its shepard."

A local board has no duty to advise a registrant of every conceivable exemption that he may be entitled to. The only official response to any statement made by Mercado regarding his ministerial statements was made by Captain Vopni after Mercado executed his Form 398 stating that he was a Bible student with the Jehovah Witnesses and (therefore) a conscientious objector. Vopni wrote that "This does not constitute a disqualification". On its face, and under the circumstances, Mercado's statement was pressing only his claim for conscientious objection. The Court can clearly infer and does conclude, that Mercado himself did not intend to supply information to perfect a claim for a ministerial deferment. He never requested that classification. McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971).

The Court finds defendant guilty as charged. The foregoing constitutes findings pursuant to Rule 23(c), F.R. Crim.P.